IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**RICKEY R. WILLIAMS,**                           Case No. 1:18 CV 188

      Plaintiff,                                         Judge John R. Adams

      v.                                                Magistrate Judge James R. Knepp, II

**COMMISSIONER OF SOCIAL SECURITY,**

      Defendant.                                        REPORT AND RECOMMENDATION

### INTRODUCTION

Plaintiff Rickey R. Williams ("Plaintiff") filed a Complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision to deny disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). This matter has been referred to the undersigned for preparation of a report and recommendation pursuant to Local Rule 72.2. (Non-document entry dated January 25, 2018). Following review, and for the reasons stated below, the undersigned recommends the decision of the Commissioner be affirmed.

### PROCEDURAL BACKGROUND

Plaintiff filed for DIB and SSI on November 20, 2014, alleging a disability onset date of February 28, 2014. (Tr. 214, 216). His date last insured for DIB is December 31, 2018. (Tr. 225). His claims were denied initially and upon reconsideration. (Tr. 136, 140). Plaintiff then requested a hearing before an administrative law judge ("ALJ"). (Tr. 162). Plaintiff (represented by counsel), and a vocational expert ("VE") testified at a hearing before the ALJ on December 9, 2016. (Tr. 770-820). On March 22, 2017, the ALJ found Plaintiff not disabled in a written decision. (Tr. 15-28). The Appeals Council denied Plaintiff's request for review, making the hearing decision the

final decision of the Commissioner. (Tr. 1-3); *see* 20 C.F.R. §§ 404.955, 404.981, 416.1455, 416.1481. Plaintiff timely filed the instant action on January 24, 2018. (Doc. 1).

## FACTUAL BACKGROUND

Personal Background and Testimony

Plaintiff was born in March 1979, making him 34 years old on the alleged onset date. (Tr. 246). Plaintiff alleges disability due to bipolar disorder, leg injuries, anxiety, and depression. (Tr. 61-62).

Plaintiff lived in an apartment with his wife and seven children. (Tr. 776-77). He was "sometimes" homeless, when he argued with his wife. (Tr. 778-79). Plaintiff estimated he was homeless approximately three months total during the last year. (Tr. 779). He did not have a driver's license, and did not use public transportation because he believed other passengers stared at him. (Tr. 778). Plaintiff had a GED. (Tr. 780).

Plaintiff last worked from 2008 to 2013 babysitting for a relative. (Tr. 782). He testified he was no longer able to work due to concentration issues, as well as pain in both feet, left knee, and left hip resulting from prior injuries. (Tr. 784-85).

Plaintiff described himself as "moody" and aggressive. (Tr. 794). He took Prozac and Seroquel, which helped him sleep. (Tr. 794-95). He sometimes had difficulty filling prescriptions due to insurance issues, but otherwise took his medication a "majority" of the time. (Tr. 795).

In a function report from December 2014, Plaintiff noted he was able to cook simple meals. (Tr. 272). He watched television in his spare time and often spent time alone because he was very moody. *Id.*

<u>Relevant Medical Evidence</u>[1]

*Charak Center Records*

Plaintiff began receiving mental health treatment at the Charak Center for Health and Wellness in November 2014. (Tr. 720). During his intake assessment, Plaintiff saw psychiatrist Rakesh Ranjan, M.D. (Tr. 438). Plaintiff reported anxiety, depression, mood swings, irritability, auditory hallucinations, and racing thoughts. *Id.* He had difficulty sleeping, but noted that Seroquel helped in the past. *Id.* On examination, Plaintiff had auditory and visual hallucinations, circumstantial thought process, a full affect, and euthymic mood. (Tr. 440-41). Dr. Ranjan diagnosed post-traumatic stress disorder ("PTSD"), bipolar disorder, and alcohol/cannabis abuse. (Tr. 450). In December 2014, Plaintiff again reported racing thoughts, depression, and mood swings. (Tr. 433). On examination, Dr. Ranjan found Plaintiff was cooperative, did not have any hallucinations, had a logical thought process, and full affect, but had a depressed and anxious mood. (Tr. 435). Plaintiff's condition was "stable". (Tr. 436).

At a July 2015 visit to the Charak Center, Plaintiff reported he had been out of medication since April 2015. (Tr. 423). He reported auditory and visual hallucinations, moderate depression and anxiety symptoms, and moderate mood swings. *Id.* On examination, Plaintiff had a logical thought process, irritable and depressed mood, average insight, fair judgment, and normal impulse control. (Tr. 425). Psychiatrist Byung Min Jinn, M.D., reported Plaintiff's condition was "deteriorating". (Tr. 426). At an October 2015 visit, Plaintiff again had severe depressive symptoms, mood swings, irritability, and anxiety. (Tr. 418). On examination, Plaintiff had auditory

---

1. Because he only challenges the mental health limitations, the undersigned summarizes the portions of the record relevant to the arguments raised by Plaintiff. *See Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (arguments not raised in opening brief considered waived).

and visual hallucinations; a depressed, irritable and anxious mood; full affect; and average insight and judgment. (Tr. 420). Plaintiff's condition was again "deteriorating". (Tr. 421). Dr. Ranjan refilled Plaintiff's Prozac and Seroquel prescriptions. *Id.*

In March 2016, Plaintiff again reported he was out of his medications. (Tr. 492). Dr. Ranjan noted he was "[l]ast seen possibly 2-3 months ago". *Id.* On examination, Plaintiff had a logical thought process, euthymic mood, and constricted affect. (Tr. 494). He had fair judgment and normal impulse control. *Id.* Dr. Ranjan refilled Plaintiff's medications and encouraged him to keep future appointments. (Tr. 495).

At an October 2016 visit to the Charak Center, Dr. Ranjan noted Plaintiff had not been seen since April 2016[2], but Plaintiff reported being stable on his medications. (Tr. 488). Plaintiff reported mild anxiety and depression symptoms, and moderate mood swings. *Id.* On examination, Plaintiff was oriented, had a logical thought process, and euthymic mood. (Tr. 489). Dr. Ranjan refilled the Prozac and Seroquel prescriptions and recommended therapy. (Tr. 490-91).

*Consultative Examination*

In June 2015, Natalie Whitlow, Ph.D., performed a consultative mental health evaluation of Plaintiff. (Tr. 403-08). Plaintiff reported poor concentration, mood swings, aggressive behavior, depression, and a prior suicide attempt. (Tr. 404). Plaintiff noted he was "a little better" since his providers increased medication dosages, *id.*, and stated his sleep improved while on medication (Tr. 406). Plaintiff reported a frequently poor appetite. *Id.* He attended to personal hygiene intermittently depending on his mood and did not participate in household chores. *Id.*

---

2. The parties did not point to an April 2016 visit, nor was one found in the record. The last visit in the record prior to October 2016 was the March 2016 visit described above.

On examination, Plaintiff was "disheveled, poorly kept, moderately dirty, and worn." *Id*. He presented with a "foul smelling body odor". *Id*. He had a stable affect, but described his typical mood as depressed, angry, and irritable. (Tr. 407). He did not present with any anxiety symptoms. *Id*. Plaintiff was oriented to time and place, had fair insight, but poor judgment. (Tr. 408). Dr. Whitlow diagnosed unspecified bipolar and related disorder, ADHD, and an intellectual disability. *Id*.

Opinion Evidence

*Treating Physician*

In December 2016, Dr. Ranjan completed a mental medical source statement. (Tr. 720). Dr. Ranjan noted he saw Plaintiff monthly to bi-monthly since November 2014 for pharmacological and case management. *Id*. He listed Plaintiff's diagnoses as schizoaffective disorder and sleep disorder. *Id*. Dr. Ranjan noted Plaintiff's symptoms included suicidal thoughts, hallucinations, anxiety, and sleep disturbance. (Tr. 721).

Dr. Ranjan opined Plaintiff had a "limited but satisfactory"[3] ability to: remember work-like procedures; remember and carry out short, simple instructions; maintain attention for two hour segments; maintain regular attendance; make simple work-related decisions; perform at a consistent pace; ask questions; understand, remember, and carry out detailed instructions; set goals; adhere to basic standards of cleanliness; travel; or use public transportation. (Tr. 722-23). Dr. Ranjan opined Plaintiff was "seriously limited"[4] in his ability to work in coordination with or proximity to others; complete a normal workday/workweek without interruptions from

3. A "limited but satisfactory" ability means the "patient has noticeable difficulty (e.g., distracted from job activity) no more than 10 percent of the workday or work week." (Tr. 722).

4. A "seriously limited" patient is one who "has noticeable difficulty (e.g., distracted from job activity) from 11 to 20 percent of the workday or work week." (Tr. 722).

psychologically based symptoms; accept instruction and respond appropriately to criticism from supervisors; get along with co-workers; respond appropriately to changes in the work setting; deal with normal work stress; maintain awareness of hazards; interact with the public; or maintain socially appropriate behavior. *Id*. In support of these findings, Dr. Ranjan cited Plaintiff's anxiety, irritability, chronic psychological symptoms, and poor stress tolerance. *Id*. Dr. Ranjan opined Plaintiff would be absent from work approximately two days per month. (Tr. 724).

*Examining Physician*

In June 2015, Dr. Whitlow opined Plaintiff was limited in his ability to understand, remember, and carry out instructions due to ADHD and an intellectual disability. (Tr. 409). Dr. Whitlow found Plaintiff was also limited in his ability to maintain attention and concentration due to ADHD and an intellectual disability. (Tr. 410). These conditions impacted his ability to maintain concentration, persistence, and pace while performing simple and complex tasks. *Id*. Plaintiff was limited in his ability to respond to supervision and coworkers due to bipolar disorder and accompanying symptoms which caused him to have agitation and impulse control issues. *Id*. Finally, Dr. Whitlow opined Plaintiff was limited in his ability to respond to pressures in a work setting due to bipolar disorder, which again, caused him to become easily agitated and occasionally violent. *Id*.

*Reviewing Physicians*

In June 2015, state agency psychologist Robelyn Marlow, Ph.D., reviewed Plaintiff's medical record. (Tr. 68, 72-73). She opined Plaintiff had a mild restriction in activities of daily living; moderate difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence or pace. (Tr. 68). Dr. Marlow found no evidence of limitation in Plaintiff's ability to carry out short, simple instructions. (Tr. 72). Plaintiff was not

significantly limited in his ability to carry out detailed instructions; sustain a routine; work in coordination with, or in proximity to others; or maintain socially appropriate behavior. (Tr. 72-73). Plaintiff was moderately limited in his ability to maintain attention and concentration; perform on a schedule; interact with the public; or respond appropriately to criticism. *Id*. Dr. Marlow noted Plaintiff's "main problems are his personality functioning and his drug and alcohol abuse." (Tr. 73). Further, she found "[d]ue to the claimant's drug and alcohol use he may require minimal supervision to insure punctuality and attendance. His depression does not significantly affect his functioning." (Tr. 72).

In August 2015, Paul Tangeman, Ph.D., also reviewed Plaintiff's medical record. (Tr. 105-06). Dr. Tangeman opined Plaintiff was not significantly limited in his ability to remember locations and work procedures; understand and remember, or carry out short, simple instructions; carry out detailed instructions; maintain a routine; work in coordination with or in proximity of others; or make simple work-related decisions. *Id*. He found Plaintiff was moderately limited in his ability to understand and remember detailed instructions; maintain attention and concentration; complete a normal workday without interruptions from psychologically based symptoms; or accept instruction and respond to criticism from supervisors. *Id*. Dr. Tangeman found "[d]ue to claimant's personality functioning he may be resistant to authority figures but he can relate adequately on a superficial basis." (Tr. 106). Further, he opined "[t]he claimant's main problems are his personality functioning and his drug and alcohol use", and "[d]ue to claimant's drug and alcohol use he may require minimal supervision to insure punctuality and attendance." *Id*.

VE Testimony

A VE appeared and testified at the hearing before the ALJ. *See* Tr. 812-18. The ALJ asked the VE to consider a person with Plaintiff's age, education, and vocational background who was

physically and mentally limited in the way in which ALJ determined Plaintiff to be. (Tr. 813-15). The VE opined such an individual could not perform Plaintiff's past work, but could perform other jobs such as a food and beverage order clerk, a title charge account clerk (interviewing role), and a title document preparer (support role). (Tr. 815).

ALJ Decision

The ALJ made the following findings of fact and conclusions of law in his March 22, 2017 decision:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2018.
>
> 2. The claimant has not engaged in substantial gainful activity since February 28, 2014, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: osteoarthritis status-post remote ankle fractures, bipolar disorder, schizoaffective disorder, and attention deficit disorder/ attention deficit hyperactivity disorder (ADD/ADHD) (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the following: lift/carry ten pounds frequently and twenty pounds occasionally, sit six hours and stand/walk six hours in an eight-hour workday, occasionally reach overhead on the left, never climb ladders, ropes, scaffolds, frequently stoop, kneel, and crouch, occasionally crawl, can never work at unprotected heights, around moving mechanical parts, and can never operate a motor vehicle, must avoid concentrated exposure to dust, odors, fumes, and pulmonary irritants, is limited to simple, routine, repetitive tasks, but cannot perform at a production rate pace (e.g. assembly line work), is limited to superficial interaction with supervisors, coworkers, and the public, meaning no arbitration, negotiation, mediation, confrontation, or supervising others, and is limited to few changes in a routine work setting defined as occasional.
>
> 6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born [i]n March [] 1979 and was 34 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 28, 2014, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 15-28).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn

"so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) & 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. §§ 404.1520 and 416.920—to determine if a claimant is disabled:

1.  Was claimant engaged in a substantial gainful activity?

2.  Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3.  Does the severe impairment meet one of the listed impairments?

4.  What is claimant's residual functional capacity and can claimant perform past relevant work?

5.  Can claimant do any other work considering his residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and

10

meets the duration requirements, is he determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f) & 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

### DISCUSSION

Plaintiff argues the ALJ erred in two ways: (1) by failing to properly evaluate the opinion of Dr. Ranjan; and (2) by failing to account for all mental health limitations to which the state agency psychologists opined. (Doc. 12, at 6, 10). The Commissioner responds that the ALJ's decision is supported by substantial evidence. (Doc. 17, at 6). For the reasons discussed below, the undersigned recommends the Commissioner's decision be affirmed.

Treating Physician Opinion

First, Plaintiff argues the ALJ erred when he failed to properly evaluate the opinion of Dr. Ranjan, Plaintiff's treating psychiatrist. Specifically, he contends the ALJ "fail[ed] to provide 'good reasons' for rejecting Dr. Ranjan's more limiting restrictions". (Doc. 12, at 8). The Commissioner responds that the ALJ's decision is supported by substantial evidence. For the reasons stated below, the undersigned recommends the decision of the Commissioner be affirmed in this regard.

Generally, medical opinions of treating physicians are accorded greater deference than non-treating physicians. *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 242 (6th Cir. 2007); *see also* SSR 96–2p, 1996 WL 374188. "Because treating physicians are 'the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairments and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone,' their opinions are generally accorded more weight than those of non-treating physicians." *Rogers,* 486 F.3d at 242.

A treating physician's opinion is given "controlling weight" if it is supported by: 1) medically acceptable clinical and laboratory diagnostic techniques; and 2) is not inconsistent with other substantial evidence in the case record. *Id.* (citing *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004)).

Importantly, the ALJ must give "good reasons" for the weight he gives a treating physician's opinion, reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Ealy v. Comm'r of Soc. Sec.,* 594 F.3d 504, 514 (6th Cir. 2010).

When determining weight and articulating "good reasons", the ALJ "must apply certain factors" to the opinion. *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 660 (6th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(2)). These factors include the length of treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the treating source. *Id.* While an ALJ is required to delineate good reasons, he is not required to enter into an in-depth or "exhaustive factor-by-factor analysis" to satisfy the requirement. *Francis v. Comm'r of Soc. Sec. Admin.*, 414 F. App'x 802, 804-05 (6th Cir. 2011).

Here, the ALJ summarized Dr. Ranjan's opinion and gave reasons for the weight assigned:

Treating psychiatrist, Rakesh Ranjan, M.D., completed a medical source statement on December 12, 2016 (Exhibit B12F). Dr. Ranjan concluded that the claimant would be absent from work approximately two days a month due to his impairments. He also concluded that the claimant is "seriously" limited in his ability to interact appropriately with the general public and maintain socially appropriate behavior. He is also "seriously" limited in his ability to deal with the stress of semiskilled and skilled work, work in coordination with others without being distracted, complete[] a normal workday/workweek, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without distracting them, respond appropriately to changes in a routine work setting, deal with normal work stress and be aware of normal hazards/take appropriate precautions. The undersigned gives partial weight to the conclusions of

> Dr. Ranjan as they are somewhat vague and only somewhat supported by his
> treatment records. For example, objective findings are generally consistent
> throughout the claimant's treatment records and, as outlined above, support
> moderate limitations in functioning.

(Tr. 25).

Here, the ALJ acknowledged Dr. Ranjan's was a treating physician, but only gave his

conclusions "partial weight" because they were "somewhat vague". *Id.* This is supported by the

record. For example, Dr. Ranjan marked Plaintiff "seriously limited" in his ability to work with

others, complete a normal workday, accept instruction from supervisors, deal with work stress,

avoid hazards, and maintain appropriate social behavior. (Tr. 722-23). In support of these findings,

he listed Plaintiff's diagnoses of anxiety and depression, and noted "chronic" psychological

symptoms such as poor stress tolerance, racing thoughts, and irritability. *Id.* Dr. Ranjan's

statements certainly suggest some limitation, but such general statements (essentially repeating a

diagnosis), "are not specific enough for the ALJ to determine how they would translate into work

related restrictions." *See Andres v. Comm'r of Soc. Sec.*, 2017 WL 3447849, at *14 (N.D. Ohio);

*see also, e.g., Rouse v. Comm'r of Soc. Sec.*, 2017 WL 1102684, at *4 (N.D. Ohio) (holding that

"the vague nature of [an] opinion in general" was a valid reason for discounting); *Pugh v. Comm'r

of Soc. Sec.*, 2015 WL 419000, at *1 (N.D. Ohio) ("the ALJ's decision to discount the opinion

based on its vagueness is sufficiently clear and supported by the evidence."). Further, as discussed

below, the ALJ reasonably found that such limitations were also unsupported by the record and

inconsistent with Dr. Ranjan's own treatment notes.

Next, the ALJ found Dr. Ranjan's opinions "only somewhat supported" by his treatment

records, noting that the objective findings in the record were more consistent with moderate

limitations in functioning, as opposed to the severe limitations found by Dr. Ranjan. (Tr. 25). While

Dr. Ranjan recognized Plaintiff had difficulties with his mood and aggression in his treatment

13

notes, he often found Plaintiff had an average demeanor, normal perception, and a logical thought process. (Tr. 23) (citing Tr. 360, 374, 384, 389). Earlier, the ALJ recognized that, at a July 2015 visit, Plaintiff had been out of his medications since April. (Tr. 23) (citing Tr. 423). Dr. Ranjan found Plaintiff was well groomed, cooperative, had a logical thought process, and a full affect. (Tr. 423). At an October 2016 visit, Dr. Ranjan noted Plaintiff had been out of his medications for over a month, but reported feeling "stable" while on them. (Tr. 488). On examination, Dr. Ranjan found Plaintiff had normal impulse control, logical thought process, and a full affect. (Tr. 23) (citing Tr. 489). Here, the ALJ recognized the severe limitations opined by Dr. Ranjan were unsupported by the objective medical evidence of record – which primarily included his own treatment notes. (Tr. 25). Ultimately the ALJ decided not to assign controlling weight to Dr. Ranjan's opinion, and gave reasons for doing so. And – as is the case here – an ALJ may provide sufficient reasons for not assigning controlling weight to a treating physician by attacking the consistency and supportability of his opinion. *See Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 472 (6th Cir. 2006).

Here, the weight the ALJ assigned Dr. Ranjan's opinion is supported by "good reasons", reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Ealy,* 594 F.3d at 514. Thus, the undersigned finds no error and recommends the Commissioner's decision be affirmed in this regard.

Reviewing Physician Opinions

Next, Plaintiff argues the ALJ erred when he failed to account for all of the mental health limitations opined by state agency reviewing psychologists, Drs. Marlow and Tangeman. The Commissioner responds that the ALJ's decision is supported by substantial evidence. For the

14

reasons discussed below, the undersigned recommends the decision of the Commissioner be affirmed in this regard.

As an initial matter, the opinion of a non-examining state agency psychologist is not weighted the same as a treating physician. Under the regulations, there exists a hierarchy of medical opinions: first, is the treating source (as discussed above); second, is the non-treating source, one who has examined but not treated the plaintiff; and lastly, is a non-examining source, one who renders an opinions based on a review of the medical record as a whole. 20 C.F.R. §§ 404.1502, 416.902. An ALJ must provide "good reasons" for the weight given to a treating source, *Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 391 (6th Cir. 2004), but not for a non-treating or non-examining source, *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) (holding "the SSA requires ALJs to give reasons for only *treating* source" opinions) (emphasis in original); *Murray v. Comm'r of Soc. Sec.*, 2013 WL 5428734, at *4 (N.D. Ohio) (finding "[n]otably, the procedural 'good reasons' requirement does not apply to non-treating physicians."). "Under certain circumstances, an ALJ may assign greater weight to a state agency consultant's opinion than to that of a treating or examining source." *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 834 (6th Cir. 2016) (citing SSR 96–6p, 1996 WL 374180, at *2–3). This is because the Commissioner views such medical sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." SSR 96–6p, 1996 WL 374180, at *2–3.

The ALJ addressed the opinions of the state agency psychologists and explained the weight assigned:

> Dr. Marlow concluded that the claimant can perform simple to moderately difficult tasks (Exhibit B1A). He may also require minimal supervision to insure punctuality and attendance and he can relate adequately on a superficial basis. This assessment was essentially affirmed upon reconsideration except for limiting the claimant to

simple tasks (Exhibit B5A). The undersigned gives some weight to the conclusions of the evaluating sources as they are somewhat consistent with the objective and subjective evidence of record. However, there are additional limitations regarding working at a production rate pace due to moderate limitations in the claimant's ability to concentrate, persist, or maintain pace. In addition, due to moderate limitations in adapting and managing himself, the undersigned finds that the claimant is limited to few changes in a routine work setting defined as occasional.

(Tr. 25).

Plaintiff argues that, by finding the state agency psychologists' restrictions not limiting enough, the ALJ "was inherently agreeing and accepting their expressly opined limitations." (Doc. 12, at 11). Thus, he contends the ALJ erred when he did not consider that both psychologists found Plaintiff "may need minimal supervision to insure punctuality and attendance." (Doc. 12, at 11) (quoting Tr. 72, 106). Plaintiff argues that, while the ALJ acknowledged this limitation, he did not incorporate it into the RFC. *Id*. The Commissioner points out that the reviewing psychologists predicated this limitation on Plaintiff's drug and alcohol abuse. (Doc. 17, at 12) (citing Tr. 72, 106). In a Reply, Plaintiff recognizes this point, but asserts that the omission of the limitation constitutes reversible error. (Doc. 18, at 4).

Plaintiff is incorrect in his assertion that, because the ALJ found more restrictive limitations than the psychologists opined, he "inherently agreed" with the remainder of their opinions. An ALJ can give weight to the opinion of a medical source without incorporating all portions of it into an RFC. *See, e.g., Smith v. Colvin*, 2013 WL 6504681, at *11 (N.D. Ohio) (finding an ALJ who attributes "great weight" to state reviewing psychologist opinions not required to include in claimant's RFC all limitations they assessed); *Hericks v. Astrue*, 2012 WL 161105, *7 (S.D. Ohio) ("The fact that the ALJ did not entirely adopt either of the RFC opinions offered by treating and consulting physicians is not contrary to the Sixth Circuit's opinion in *Hensley,* because the ALJ's analysis explains the basis for his opinions."). Further, an RFC determination must be supported

by evidence of record, but it need not correspond to, or even be based on, any specific medical opinion. *See Brown v. Comm'r of Soc. Sec.*, 602 F. App'x 328, 331 (6th Cir. 2015). Instead, it is the ALJ's duty to formulate a claimant's RFC based on all the relevant, credible evidence of record, medical and otherwise. *Justice v. Comm'r of Soc. Sec.*, 515 F. App'x 583, 587 (6th Cir. 2013).

Here, the ALJ did not say he was "adopting" the reviewing psychologists' opinions, but stated he gave "some" weight to them because they were "somewhat consistent" with the evidence of record. (Tr. 25). The ALJ analyzed these opinions and incorporated some of the findings. *Compare* Tr. 25 (ALJ limiting Plaintiff to simple, routine, repetitive tasks); *with* Tr. 72 (Dr. Marlow finding "no evidence of limitation" in Plaintiff's ability to carry out short simple instructions); *and* Tr. 105 (Dr. Tangeman also finding "no evidence of limitation" in Plaintiff's ability to carry out short simple instructions). However, the ALJ found "additional limitations" were necessary in some areas. (Tr. 25). Specifically, the ALJ found Plaintiff was moderately limited in his ability to adapt and manage himself, and limited Plaintiff to a work routine with few ("occasional") changes. *Id*. Additionally, the ALJ determined Plaintiff was unable to work at a production rate pace due to his limitations in concentration, persistence, and pace. *Id*.

Additionally, the Commissioner is correct that Drs. Marlow and Tangeman found "[d]ue to the [Plaintiff's] drug and alcohol use he *may* require minimal supervision to insure punctuality and attendance." (Doc. 17, at 12-13) (citing Tr. 72, 106) (emphasis added). Their punctuality assessment was thus expressly based on Plaintiff's drug and alcohol use. (Tr. 72, 106). The ALJ found Plaintiff's drug abuse was not a "severe" impairment at step two of the disability analysis. (Tr. 17). By definition, a "severe" impairment is one that "significantly limits your physical or mental ability to do basic work activities". 20 C.F.R. §§ 404.1520(c) and 404.920(c). If a claimant has at least one severe impairment, the ALJ must continue the disability evaluation and consider

17

all the limitations caused by the claimant's impairments – severe or not. *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 576-77 (6th Cir. 2009). Importantly, when an ALJ considers all a claimant's impairments in the remaining steps of the disability determination, the failure to find additional severe impairments does not constitute reversible error. *Nejat*, 359 F. App'x at 577 (citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)). Here, by not finding Plaintiff's drug and alcohol use a "severe" impairment at step two, the ALJ determined it did not impose more than a minimal effect on his ability to perform basic work activities. (Tr. 19). Thus, it can be said that he implicitly rejected the psychologists' opinion on the supervision and punctuality restriction because that restriction was based solely on drug and alcohol use. *See* Tr. 72, 106.

Moreover, the ALJ limited Plaintiff to a work routine with few (occasional) changes, as well as superficial interaction with supervisors, coworkers, and the public. (Tr. 25). By imposing these restrictions, the ALJ recognized Plaintiff had some difficulties with supervision and changes in his work routine.

In sum, the undersigned finds no error in the ALJ's analysis of the state agency psychologists' opinions, and recommends the Commissioner's decision be affirmed in this regard.

### CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision denying SSI and DIB supported by substantial evidence and recommends the decision be affirmed.


  s/James R. Knepp II
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).